IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TAMMY ANN HAWKINS,

       Plaintiff,

v.                                                                                                               1:20-cv-01259 JHR

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Tammy Ann Hawkins's Motion to Reverse and Remand with Supporting Memorandum [Doc. 27]. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties consented to Magistrate Jerry H. Ritter resolving Hawkins's challenge to the Commissioner's Final Decision on her application for Social Security benefits and entering Final Judgment in this appeal. [Docs. 5, 10]. Having reviewed the parties' briefing and the Administrative Record ("*AR*"), the Court grants Hawkins's Motion and reverses the Commissioner's Final Decision denying Hawkins benefits under the Social Security Act.

**I.   INTRODUCTION**

Administrative Law Judges ("ALJs") in the Social Security Administration use a five-step sequential analysis to determine whether someone will receive benefits from the Administration. Step three requires a broad assessment of the claimant's ability to work while step four requires a more specific assessment. ALJs are required to explain their findings at both steps. This case is about what the law requires when an ALJ's findings at step three appear inconsistent with step four and what kinds of explanations the ALJ must give to account for such differences.

The Court finds in this case that the ALJ inconsistently found moderate mental limitations in all mental capacities at step three and failed to explain how restricting the claimant to unskilled work at step four accounted for those limitations. This violated the basic articulation requirements in the Administration's regulations and requires remand. Moderate mental limitations at step three do not necessarily require the ALJ to craft any specific corresponding limitation in the claimant's residual functional capacity. But they must be acknowledged and, if accommodated only by limiting the claimant to unskilled work, the ALJ must explain why unskilled work is the appropriate accommodation. Failure to do so in this case was error.

## II.  PROCEDURAL HISTORY

Hawkins applied for social security disability insurance ("SSDI") under Title II of the Social Security Act in April 2012, claiming disability beginning in February 2011. *AR* at 426–30.[1] She also applied for supplemental security income ("SSI") under Title XVI in October 2012, claiming her disability began in January 2010. *AR* at 449–57. Over the course of her application process, Hawkins alleged that symptoms of depression, anxiety, diabetes mellitus, osteoarthritis and associated bone spurs, gastroesophageal reflux disease (also called "GERD" or "acid reflux"), esophagitis, irritable bowel syndrome, and degenerative bone disease prevented her from working. *See AR* at 120, 514, 557. The Administration denied Hawkins's SSDI application initially in July 2012, *AR* at 115, denied both SSDI and SSI on reconsideration in May 2013, *AR* at 155–56, and denied benefits yet again in August 2014 after a hearing before an ALJ. *AR* at 157. Hawkins then worked at Wagon Wheel Country Court LLC as a manager and kept that position from October 2014 to August 2016.[2] *AR* at 74–76, 503. Wagon Wheel owns

---

[1] Document 19 comprises the sealed Certified Transcript of the Administrative Record. The Court cites the Record's internal pagination rather than the CM/ECF document number and page.
[2] The Commissioner claims that Hawkins was "an office manager at a county court" during this time. [*See* Doc. 30, p. 3, 12]. Hawkins's testimony and employment records do not suggest she ever worked for a county court.

and runs a mobile home park in Farmington, New Mexico; Hawkins was able to work from home. *AR* at 74–76. Hawkins later amended her disability start date to August 31, 2016. *AR* at 43–44. The Administration's Appeals Council reversed and remanded the 2014 decision in April 2016. *AR* at 178. After a second hearing, ALJ Eric Weiss denied benefits in March 2017. *AR* at 183. The Appeals Council reversed and remanded Hawkins's case again in December 2018, *AR* at 210, and Hawkins had a third hearing, again before ALJ Weiss, in February 2020. *See AR* at 36–59.

Hawkins's unusually long application process produced a large body of evidence about her pain and physical limitations. One source of evidence was Hawkins's own statements. In 2012, Hawkins submitted an adult function report to the Administration in which she described her daily activities and how her conditions affected various abilities. *See AR* at 533–41. This report included some evidence that Hawkins could perform basic tasks such as preparing meals and performing light chores and other evidence that Hawkins becomes easily exhausted and must lie down for long stretches of the day. *See AR* 533–41. Hawkins also testified about her symptoms at her hearings, each time alleging her symptoms interfered with her ability to work. *See AR* at 44–45, 75–76, 102–06.

Hawkins also submitted evidence from medical sources, including her primary care provider of several years, Lori Padgett FNP-BC. In May 2014, Padgett filled out a residual functional capacity form stating, among other things, that she believed Hawkins's pain prevented Hawkins from working. *See AR* at 1333–38. Padgett also wrote a letter in July 2016 opining that Hawkins's impairments and pain had worsened and advocated that Hawkins be found disabled. *AR* at 1557. Besides Padgett's written opinions, the record was replete with other medical opinions and objective medical evidence, some of which suggested that Hawkins may be

able to perform some work, others suggesting the opposite. *See AR* at 19–23 (detailing the medical evidence produced).

ALJ Weiss issued the third decision denying Hawkins benefits on March 18, 2020. *AR* at 9. Hawkins again sought review from the Appeals Council but was denied on October 6, 2020. *AR* at 1. This made the ALJ's denial the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 422.210(a).[3] Hawkins timely sued the Acting Commissioner in this Court on December 4, 2020, seeking review and reversal of ALJ Weiss's decision. [Doc. 1]. This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a). The case was assigned to Magistrate Judge Jerry H. Ritter on December 4, 2020, [Doc. 3],[4] and the parties consented to my presiding. [Doc. 11]. On October 11, 2021, Hawkins filed her motion to reverse and remand for a rehearing. [Doc. 27]. The Commissioner responded in opposition on January 12, 2022, [Doc. 30], and Hawkins replied on January 27, 2022, [Doc. 31], which completed briefing. [*See* Doc. 32].

## III.     THE COMMISSIONER'S FINAL DECISION

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R.

---

[3] Claimants who are denied benefits by the Administration must obtain a "final decision" from the Administration before they may appeal the denial to a federal district court. *See* 42 U.S.C. § 405(g). Generally, when the Administration's Appeals Council denies review after the ALJ denies benefits, the ALJ's decision is "final" enough for a district court to review. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003) (finding that the Appeals Council's denial of review made an ALJ's decision to deny benefits "the Commissioner's final decision for purposes of review").
[4] Documents 3–5, 10, and 11 are text-only entries available on CM/ECF.

§ 404.1505(a).[5]  The Commissioner must apply a five-step sequential analysis to determine eligibility for benefits.  20 C.F.R. § 404.1520(a)(4).[6]

At step one of the sequential analysis, ALJ Weiss found that Hawkins has not engaged in substantial gainful activity since her alleged onset date.  *AR* at 15.  At step two, he found that Hawkins has the following severe impairments: "lumbar, thoracic, and cervical spine osteoarthritis and degenerative disc disease; pelvic bone spurs; diabetes mellitus Type II; irritable bowel syndrome; gastroesophageal reflux disease; bilateral carpal tunnel syndrome (right worse than left); chronic pain syndrome; anxiety disorders and depression[.]"  *AR* at 15 (bracketed punctuation added).  The ALJ also found that Hawkins has several non-severe impairments which he was required to consider as well.  *AR* at 15–16.  At step three, ALJ Weiss found that Hawkins's impairments, individually and in combination, do not meet or medically equal any impairment in the regulatory "listings."  *AR* at 16.  Applying the "paragraph B" criteria, however, he found that Hawkins has moderate limitations in her abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself.  *AR* at 16–17.

When a claimant does not meet a listed impairment, the ALJ must determine the claimant's residual functional capacity.  20 C.F.R. § 404.1520(e).  Residual functional capacity is a multidimensional description of the work-related abilities a claimant retains despite her impairments.  *See id.* at § 404.1545(a)(1).  It is "not the *least* an individual can do despite his or

---

[5] Regulations for determining whether a claimant is disabled for purposes of for both SSDI and SSI are identical but are nonetheless codified in two separate parts of the Code of Federal Regulations.  Part 404 of Title 20 governs SSDI while Part 416 governs SSI.  The Court cites only the applicable regulations in Part 404, but the analogous regulations in Part 416 apply as well.
[6] These steps are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

her limitations or restrictions, but the *most*." Social Security Ruling ("SSR") 96-8p at "Purpose" (emphasis in original). ALJ Weiss determined that Hawkins:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is able to lift 20 pounds occasionally and lift and carry 10 pounds frequently and push and pull the same. She is able to walk and stand for six hours per eight-hour workday *with normally scheduled breaks.* She is able to occasionally climb ramps and stairs, but never climb ladders, ropes and scaffolds. She is able to occasionally stoop, crouch, kneel and crawl. The claimant is able to frequently handle and finger with bilateral upper extremities. The claimant must avoid more than occasional exposure to extreme cold and must avoid all exposure to unprotected heights and dangerous moving machinery. She is able to understand and remember and carry out simple instructions and make commensurate work related decisions in a work setting with few changes. She is able to interact occasionally with supervisors, co-workers and the public. The claimant is able to maintain concentration, persistence and pace for two hours at a time during the workday *with normal[ly] scheduled breaks.*

*AR* at 18–19 (bracketed language and emphasis added). To reach these conclusions, ALJ Weiss stated that he considered all symptoms and opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1529, 404.1527, and SSR 16-3p. *AR* at 19. Among other topics, he discussed Hawkins's hearing testimony, in which Hawkins alleged disabling symptoms, and contrasted it with Hawkins's statements in the 2012 functional report in which she described various tasks she was able to perform despite her symptoms. *See AR* at 19–20. He also discussed the medical evidence at length and stated that he gave Padgett's opinions little weight. *See AR* at 20–23. The ALJ found that the information in Padgett's residual functional capacity form was so sparse that it "cannot establish the existence of medically determinable impairments" and that Padgett's letter "provides no function by function assessment of the claimant's capabilities, merely stating that the claimant is in a lot of pain and is disabled." *AR* at 22–23. ALJ Weiss also noted that Padgett's opinions about Hawkins's ability or inability to work were not given any weight. *AR* at 23 (citing 20 C.F.R. § 404.1520b(c)(3)). Applying his

residual functional capacity findings and relying on vocational expert testimony, the ALJ determined that Hawkins cannot perform any past relevant work. *AR* at 23.

ALJ Weiss then found at step five that Hawkins is not disabled. *AR* at 23. He adopted the vocational expert's opinion that Hawkins's age, education, work experience, and residual functional capacity allow her to perform three different jobs in the Dictionary of Occupational Titles which require light exertion. *AR* at 24. The ALJ further found that these jobs exist in significant numbers in the national economy. *AR* at 24. He thus concluded that Hawkins has not been disabled, as defined by the Social Security Act, from August 31, 2016 through the date of his decision and denied benefits. *AR* at 24.

IV. **STANDARD OF REVIEW**

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

V. **ISSUES PRESENTED**

(a) Whether Administrative Law Judge Weiss adequately considered Hawkins's severe mental impairments when he determined Hawkins's residual functional capacity?

(b) Whether ALJ Weiss adequately considered the opinions of Hawkins's primary care provider, Jodi Padgett FNP-BC?

(c) Whether ALJ Weiss adequately considered Hawkins's subjective symptom statements?

**VI.    PARTIES' ARGUMENTS**

Hawkins argues that ALJ Weiss erred by failing to adequately consider certain findings and evidence when he determined Hawkins's residual functional capacity. Specifically, she argues that ALJ Weiss did not appropriately consider Hawkins's severe mental impairments, the opinions of Hawkins's primary care provider, and Hawkins's own statements about her symptoms. In her view, each of these errors is grounds for reversal and remand. The Commissioner rebuts each argument individually and claims that Hawkins is asking this court to reweigh the evidence, which it cannot do. *See Lax*, 489 F.3d at 1084. The Court considers each argument in turn.

    a.    Did the ALJ adequately consider Hawkins's severe mental impairments?

Hawkins argues that the ALJ erred, after finding that Hawkins has severe mental impairments, by failing to account for them in his residual functional capacity findings. At step two, ALJ Weiss found that Hawkins has severe mental impairments, *AR* at 15, and at step three, he found that they cause several moderate functional limitations in Hawkins's abilities to concentrate, persist, and maintain pace. *AR* at 18. The ALJ then found that Hawkins has a residual functional capacity which allows her to concentrate, persist, and maintain pace for two hours at a time with normally scheduled breaks. *AR* at 18–19. Hawkins insists that this is no limitation at all because the finding is identical to the requirements "of all basic work[.]" [Doc. 27, p. 12]. A moderate limitation, she points out, is not the same as no limitation (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)), so the ALJ's failure to assign specific working limitations corresponding to Hawkins's moderate mental limitations shows that the ALJ did not consider Hawkins's moderate limitations and should be reversed.

The Commissioner disagrees. The ALJ was required to consider and account for limitations caused by Hawkins's mental impairments, she admits, but the ALJ was not required to include any specific or particular working limitations to reflect the moderate limitation findings. [Doc. 30, p. 10]. In the Commissioner's view, the ALJ was free to account for Hawkins's mental impairments by limiting her to certain kinds of work. [Doc. 30, p. 11] (citing 20 C.F.R. § 404.1520a(a)(2)). She thus appears to argue that the ALJ accounted for Hawkins's moderate mental limitations by limiting Hawkins to "unskilled work." Further, the Commissioner asserts that Hawkins has not shown that she has specific work-related mental limitations beyond what the ALJ found. [Doc. 30, p. 12]. There was thus either no error or merely harmless error.

      b.  <u>Did the ALJ adequately consider the opinion of Hawkins's primary care provider?</u>

ALJs must consider all medical source opinions, explain the weight assigned to each, and if an opinion is not adopted, the ALJ must explain why not. 20 C.F.R. § 404.1527(b); SSR 96-8p at "Definition of RFC." Hawkins claims that the ALJ erred by assigning little weight to Padgett's opinion and that his reasons for doing so were improper. [Doc. 27, p. 14]. In her view, the ALJ did not apply the correct legal analysis because the ALJ dismissed Padgett's opinion for reasons other than the six factors listed at 20 C.F.R. § 404.1527(c)(1)–(6). [Doc. 27, p. 13–14]. The ALJ's findings contrary to Padgett's opinions were thus reached by legal error and were not supported by substantial evidence. [Doc. 27, p. 15].

The Commissioner raises three counterarguments to explain why the ALJ permissibly gave Padgett's opinion little weight. First, she argues that the ALJ discounted Padgett's opinion for being inconsistent with and unsupported by the record as a whole. [*See* Doc. 30, p. 12–13, 14–15] (citing 20 C.F.R. § 404.1527(c)(3), (4)). The Commissioner points out that Padgett's

9

2016 opinion that Hawkins is disabled was contradicted at the time by the fact that Hawkins worked in 2016, [Doc. 30, p. 14], and asserts that Padgett's opinions on Hawkins's ability to perform various tasks cited no record evidence. [Doc. 30, p. 14]. Second, the Commissioner states that Padgett opined on the issue of disability, which is reserved for the Commissioner alone and thus that portion of Padgett's opinion was entitled to no weight. [Doc. 30, p. 13–14] (citing *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008)). Finally, the Commissioner insists that the ALJ was reasonable to discount Padgett's 2014 opinion as too remote in time to be relevant. [Doc. 30, p. 15] (citing 20 C.F.R. § 404.1527(c)(6)).[7]

c. <u>Did the ALJ adequately consider Hawkins's subjective symptom statements?</u>

According to Hawkins, evidence that a claimant can perform "minimal daily activities" and "sporadic . . . household tasks or work" is not substantial evidence on which to find a claimant's pain is not disabling. [Doc. 27, p. 15] (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *Haga*, 482 F.3d at 1208). She then asserts that the ALJ relied solely on her function report from 2012 to dismiss Hawkins's allegations of disabling pain as inconsistent with other evidence, even though the report showed only that Hawkins performed minimal daily activities and household work. [*See* Doc. 27, p. 16]. Hawkins argues that this was an impermissible picking and choosing of the evidence unfavorable to her and the function report was less than substantial evidence, thus the Court must remand. [*See* Doc. 27, p. 17].

The Commissioner argues that Hawkins mischaracterizes the ALJ's use of evidence. The ALJ did not, in the Commissioner's view, rely only on evidence of Hawkins's "minimal daily activities," nor ignore Hawkins's testimony. Rather, ALJ Weiss relied on all the evidence in the

---

[7] Because Hawkins filed her claims before March 27, 2017, the rules under 20 C.F.R. § 404.1527 apply to her case. *See* 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply").

record and considered the consistency of Hawkins's testimony with other evidence, including the 2012 function report, as one part of his analysis. [Doc. 30, p. 16–17]. Other evidence included objective medical evidence, provider statements, Hawkins's statements about the effectiveness of her treatments, and evidence of Hawkins's daily activities. [Doc. 30, p. 17–18]. Based on the totality of that evidence, says the Commissioner, the ALJ reasonably concluded that Hawkins does not suffer disabling pain despite her testimony to the contrary.

## VII. ANALYSIS

The ALJ's decision must be remanded because it does not consider the effect of Hawkins's moderate mental limitations on her residual functional capacity and this error was not harmless. Because the first issue raised requires reversal, the Court does not discuss any others.

### a. Moderate Mental Limitations and Unskilled Work

#### i. *Relevant Law*

The ALJ's error arises from the relationship between findings at steps three and four of the five-step sequential analysis. Although they are separate findings, they are connected by the common application of "paragraph B" criteria to the same evidence. The findings at these steps thus must be consistent with each other; unexplained inconsistencies suggest that the ALJ misapplied the law.

At step three, the ALJ determines the severity of the claimant's impairments to determine whether her symptoms meet or equal the criteria for an impairment listed in Appendix 1 to Subpart P of Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairments qualify as a listed impairment, she is disabled *per se* under the Act. 20 C.F.R § 404.1520(a)(4)(iii). The ALJ evaluates mental impairments at step three by rating the claimant's limitations attributable to her mental impairments on a five-point scale (none, mild, moderate, marked, or extreme) across four

broad categories of mental functioning called the "paragraph B" criteria.[8]  *See* 20 C.F.R. § 404.1520a(c)(4); § 404 subpart P, App'x 1 (hereinafter "*Appendix 1*"), 12.00(E) (listing the paragraph B criteria).  This analysis is called the "special technique" or the "psychiatric review technique" (*see* Program Operations Manual System ("POMS") DI 24583.005(A)) and the ALJ applying it must consider all evidence of mental impairments to determine the severity of limitations in each category.  *See Appendix 1* at 12.00(F)(3)(a).

Generally, an impairment that causes no functional limitations or only mild functional limitations is not severe.  20 C.F.R. § 404.1520a(d)(1).  On the other end of the scale, an extreme limitation in one category or marked limitations in two or more categories makes it possible for a claimant to satisfy a listed mental impairment at step three if other criteria are also met.  *Appendix 1* at 12.00(A)(2)(b).  Meanwhile, moderate limitations in any category can be severe, but are not severe enough on their own to render the claimant disabled at step three.  *See Morgan v. Astrue*, 302 F. App'x. 786, 788–89 (10th Cir. 2008) (unpublished) (affirming an ALJ's decision to deny benefits where the ALJ found severe mental impairments at step two and designated moderate limitations caused by those impairments at step three but ultimately found the claimant not disabled).

Residual functional capacity findings at step four are similar to severity findings at step three.  At step four, the ALJ must consider the nature and extent of a claimant's mental limitations based on all relevant evidence.  20 C.F.R. §§ 404.1545(a)(3), (c).  Although the special technique findings from step three are not a residual functional capacity, the same

---

[8] The term "paragraph B criteria" comes from the structure of Appendix 1.  Each listed mental disorder in Appendix 1 has two or three paragraphs of listed criteria; satisfaction of at least two criteria typically render the claimant disabled under that listing.  *See Appendix 1* at 12.00(A)(2).  Those paragraphs are labeled A, B, and C.  *Id.*  Paragraph B always lists the same four categories of mental functioning and states that an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning" will satisfy that paragraph.  *Id.*  Those categories are thus called the "paragraph B criteria."

paragraph B criteria are again considered but in greater detail and by itemizing functions contained within the paragraph B categories. *See* SSR 96-8p at "The psychiatric review technique." The residual functional capacity must also be supported by a narrative discussion about how evidence supports each finding. SSR 96-8p at "Narrative Discussion Requirements." The primary difference, then, between the ALJ's analysis of mental impairments at steps three and four is the specificity of the findings required. This makes sense given the different purposes of steps three and four – step three determines whether the claimant is disabled *per se* while step four considers the more particular circumstances and work history of the claimant. *See Kerekes v. Kijakazi*, No. 1:21-cv-00247, 2022 WL 4129400 at *3 (D.N.M. Sept. 12, 2022) (M.J. Wormuth) (unpublished).

  While acknowledging their differences, the analytical similarities and overlap of evidence considered at these steps require their findings to be consistent even if they are not identical. A "moderate" limitation at step three cannot be meaningless for that capacity at step four. *See Haga*, 482 F.3d at 1208. ALJs must provide reasoning and evidence for each finding (42 U.S.C. § 405(g)) and the Court must be able to determine from that reasoning whether correct legal principles were followed. *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Further, the ALJ's reasoning must stand on its own merits because the Court will not consider or provide post-hoc justifications. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). Unexplained, apparent inconsistencies in an ALJ's reasoning thus preclude meaningful review and are error. With that context, the Court considers whether ALJ Weiss erred in his decision to deny benefits.

### ii. *Application to Hawkins's Case*

ALJ Weiss did not consider how Hawkins's moderate mental limitations on her ability to concentrate, persist, and maintain pace affected her ability to work in his residual functional capacity findings. This failure was error.

As discussed above, ALJ Weiss found at step three that Hawkins is moderately limited in in all four of the paragraph B functional capacities. *AR* at 17–18. This included a finding that she is moderately limited in her ability to concentrate, persist, and maintain pace. *AR* at 18. He then found that Hawkins has a residual functional capacity to perform light work and which was, in all other respects, virtually identical to the mental requirements of unskilled work. *AR* at 18–19; *compare* POMS DI 25020.010(B)(3) (listing the mental abilities necessary to perform unskilled work). These requirements include maintaining attention for extended periods of two-hour segments (though concentration is not critical); maintaining regular attendance and punctuality within customary tolerances (tolerances are usually strict, but maintaining a schedule is not critical); and completing a normal workday and workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods (these requirements are usually strict). POMS DI 25020.010(B)(3)(d), (e), (i).

ALJ Weiss's residual functional capacity is facially inconsistent with his step three findings. Even though he found that Hawkins is severely limited in abilities related to attention and consistent, prolonged performance of work, he found that Hawkins can nonetheless perform light, unskilled work with virtually no functional limits to accommodate her mental impairments. This inconsistency, on its own, does not suggest ALJ Weiss erred. If his narrative discussion about Hawkins's residual functional capacity explained why Hawkins does not need any discrete

working limitations and cited supporting evidence, the findings will comply with the regulations. *See* SSR 96-8p at "Narrative Discussion Requirements."

ALJ Weiss's decision does not provide a sufficient explanation and thus does not comply. To explain the role of Hawkins's mental impairments in her residual functional capacity, the decision describes Hawkins's alleged daily tasks, her psychiatric diagnoses and symptoms, and the effectiveness of her psychiatric treatments. *AR* at 19–21. The opinions of two state agency consultant psychologists, both of whom opined that Hawkins has no severe mental impairments, were also considered. *AR* at 21. ALJ Weiss dismissed the opinions as inconsistent with Hawkins's psychiatric history and ongoing treatment. *Id.* In total, the only supportive evidence ALJ Weiss relied upon to find that Hawkins could perform a full range of light, unskilled work without accommodations for her mental limitations were a short description of her daily activities, vague indications that "her more recent medications are noted to be working" and her "mood was noted to be reasonable [sic] controlled" in 2020. *AR* at 20–21. This discussion does not explain how someone who is severely limited in her ability to concentrate, persist, and maintain pace is able to "maintain concentration, persistence, and pace for two hours at a time during the workday with normal scheduled breaks." *AR* at 19. This is not to say all claimants with this moderate limitation cannot perform a full range of unskilled work, but the ALJ must at least explain the apparent inconsistency for this Court to follow his reasoning.

This Court's decision is supported by Tenth Circuit precedent. In *Haga v. Astrue*, the Tenth Circuit explained that "a moderate impairment is not the same no impairment at all," so the ALJ could not wholly ignore a medical opinion suggesting that the claimant had moderate limitations in certain mental capacities. 482 F.3d at 1208. This suggests that a moderate impairment at step three must also have some impact on the claimant's residual functional

15

capacity. If an ALJ cannot ignore evidence of a moderate limitation, he also cannot find moderate limitations at one step and ignore them at the next. In *Frantz v. Astrue*, an ALJ made a similar error by wholly ignoring medical opinion evidence that the claimant had moderate limitations in "maintaining attention and concentration for an extended period of time," the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and "the ability to work in coordination with or proximity to others without being distracted by them." 509 F.3d 1299, 1303 (10th Cir. 2007). ALJ Weiss's step three findings suggest that Hawkins is limited in these same capacities, and without discussion to explain how her specific limitations allow her to perform a full range of unskilled work anyway, the Court cannot follow the ALJ's reasoning. Finally, in *Wells v. Colvin*, the Tenth Circuit held that mental impairments could not be wholly ignored at step four merely because those same mental impairments were found non-severe at steps two and three. 727 F.3d 1061, 1068–69 (10th Cir. 2013). This holding suggests that limitations acknowledged in prior steps of the sequential analysis must be addressed in the residual functional capacity. That did not happen in this case, thus the ALJ erred.

        iii. *Unskilled Work Designation*

The Commissioner argues that the ALJ accounted for Hawkins's moderate mental limitations by limiting her to unskilled work. [Doc. 30, p. 9–11]. For support, she relies on *Vigil v. Colvin* and a pair of unpublished Tenth Circuit cases. The Court rejects her arguments on this point because the cases cited are distinguishable.

The *Vigil* holding does not sweep as broadly as the Commissioner claims. The Tenth Circuit noted in *Vigil* that limiting a claimant to unskilled work does not always address that claimant's mental limitations. *Vigil*, 805 F.3d at 1204 (citing *Chapo v. Astrue*, 682 F.3d 1285,

1290 n.3 (10th Cir. 2012)).  The *Chapo* court explained that this was because mental functions "are not skills but, rather, general prerequisites for most work at any skill level." *Chapo*, 682 F.3d at 1290 n.3 (quoting *Wayland v. Chater*, No. 95-7029, 1996 WL 50459 at *2 (10th Cir. Feb. 7, 1996) (unpublished)).  So, to determine whether an unskilled work designation accounts for mental limitations, the ALJ must carefully analyze the specific ways in which the claimant's impairments limit her ability to work and then compare those limits to the requirements of unskilled work.  This is what the ALJ did in *Vigil*.  In his residual functional capacity findings, the ALJ acknowledged that the claimant had a moderate limitation in the category of concentration, persistence, and pace at step three.  *Vigil*, 805 F.3d at 1203.  He then found that this limitation manifested specifically in impaired delayed recall, inability to spell in reverse, and an inability to recall the President's name.  *Vigil*, 805 F.3d at 1203.  He thus concluded that the claimant could not perform complex tasks, but evidence showed the claimant could perform simple tasks.  *Id.* at 1203–04.  This limitation was equivalent to one of the requirements of unskilled work, so the ALJ was able to account for the claimant's mental impairments by limiting her to unskilled work.  *Id.* at 1204.  By contrast, ALJ Weiss never explained what specific functional capacities Hawkins's moderate mental limitations affected, nor how limiting her to unskilled work would account for them.  *See AR* at 21 (discussing Hawkins's mental functioning).  *Vigil* shows that limiting a claimant to unskilled work can account for certain mental limitations, but that does not mean an ALJ can use the requirements of unskilled work as a substitute for careful factual analysis.

      Nor are *Bales* and *Berumen* persuasive.  In *Bales v. Colvin*, the court affirmed the ALJ's decision because the ALJ limited the claimant to unskilled work after detailing how the medical evidence and the claimant's testimony translated directly into a residual functional capacity.  576

F. App'x 792, 798 (10th Cir. 2014) (unpublished). The court was then careful to state that the thoroughness of the ALJ's analysis and the volume of the evidence relied upon meant the decision to limit the claimant to unskilled work rather than providing a more specific residual functional capacity limitation was not error "[u]nder these circumstances*.*" *Id.* at 798. As discussed above, ALJ Weiss's discussion in this case cannot be described the same way. *See above* at 14–16. *Berumen* is also unpersuasive. The court in that case merely reaffirmed that it is possible to account for mental limitations by limiting the claimant to unskilled work. *See Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. 2016) (unpublished). Its reasoning was brief, did not expound on how why the limitation was enough for that specific claimant, and was secondary to the court's other reasoning for affirming the district court. *See id.* at 766. As opinions with only persuasive value in this case, the Court gives them little weight. *See* 10th Cir. R. 32.1(A).

The Court thus finds that the Administration erred by failing to consider how Hawkins's moderate limitations stemming from her severe mental impairments would affect her residual functional capacity.

      b.  <u>Harmless Error</u>

The Administration's error is reversible if it was not harmless. Error, in the context of appeals from the Administration, are harmless when the Court can confidently determine that no reasonable administrative factfinder, following the correct analysis, could have resolved the matter any other way. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005).

Evidence in the record shows that proper application of the standards could have allowed another ALJ to find differently. Had the ALJ considered the specific effects of Hawkins's mental impairments, he could have specified limitations related to her abilities to concentrate,

persist, and maintain pace. One such limitation could have been additional, unscheduled breaks to compensate for difficulty concentrating and persisting with work. According to the vocational expert called at Hawkins's hearing, such an accommodation would have eliminated all competitive work. *AR* at 58. Thus, another reasonable ALJ who had considered the evidence fully and applied this limitation would have reached a different conclusion. Although the Court's order does not require the ALJ to reach this precise result, the possibility of it requires the Court to find ALJ Weiss's error not harmless.

## VIII.    CONCLUSION AND ORDER

Wherefore, **IT IS THEREFORE ORDERED** that Plaintiff Tammy Hawkins's Motion to Reverse and Remand [Doc. 27], is **GRANTED**, and the Commissioner's Final Decision in this case is **REVERSED.**

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent